CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JUL 0 3 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **ROBIN R. FRAZIER,** | ) | Civil Action No. 7:07cv437 |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **By: Hon. Michael F. Urbanski** |
| | ) | **United States Magistrate Judge** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Robin R. Frazier ("Frazier") brought this action pursuant to 42 U.S.C.

§ 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the final decision of the

Commissioner of Social Security denying the claim for Frazier's disability insurance benefits

("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security

Act ("Act"). The parties have consented to the undersigned Magistrate Judge's jurisdiction over

this matter, and the case is before the court on cross motions for summary judgment.

On this appeal, Frazier argues that the Commissioner erred by failing to properly assess

her residual functional capacity ("RFC") and by concluding that she is not disabled. Having

reviewed the record, and after briefing and oral argument, the court finds that the ALJ erred by

failing to support his decision to reject a portion of the state agency physician's Residual

Functional Capacity Assessment. Thus, the court concludes that the Commissioner's decision is

not supported by substantial evidence. Accordingly, the decision will be reversed and remanded

for further administrative consideration consistent with this Memorandum Opinion.

# I.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, a reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner employs a five-step process to evaluate DIB claims. 20 C.F.R. §§ 404.1520, 416.920; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that

2

exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Frazier was 39 years old at the time of the ALJ's decision and had completed both high school and medical assistant college. (Administrative Record ("R.") at 90, 111) Prior to her alleged onset of disability, Frazier worked as a cafeteria assistant, housekeeper, deli worker, and cashier. (R. 106) Frazier protectively filed applications for DIB and SSI on March 15, 2004, alleging that she became disabled on June 1, 2002. (R. 90-92, 463-66) Her applications were denied initially and upon reconsideration. (R. 68-72, 75-77) Frazier then requested an administrative hearing, which was held on May 24, 2006. (R. 36-65) Based on the testimony presented at this hearing, including that of an independent vocational expert ("VE"), the Administrative Law Judge ("ALJ") determined that Frazier was not disabled within the meaning of the Act.[1] (R. 11-24) At step one of the disability evaluation process, the ALJ found that Frazier had not engaged in substantial gainful activity since her alleged onset date of disability. (R. 16) At steps two and three, the ALJ found that Frazier's fibromyalgia, back pain, and migraines were severe impairments, although not severe enough to meet or equal the listing requirements in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-20) The ALJ also concluded that Frazier's hypothyroidism, seizure disorder, eczema, depression, and anxiety are not severe impairments. (R. 17)

---

[1] With respect to Frazier's claim for DIB, the ALJ found that Frazier acquired sufficient quarters of coverage to remain insured through June 30, 2004. Thus, in order to be entitled to DIB, Frazier must establish disability on or before June 30, 2004. (R. 14)

3

Before proceeding to step four, the ALJ found that Frazier retains the RFC to perform a full range of medium work.[2] (R. 20, 23) In making this assessment, the ALJ determined that Frazier's statements about the intensity, duration, and limiting effects of her pain and symptoms were not fully credible based upon the medical evidence, Frazier's own statements regarding her daily activities, and opinion evidence submitted by a State Agency medical consultant. (R. 20-22) At step four of the analysis, the ALJ determined that Frazier is capable of performing her past relevant work as a cafeteria attendant, housekeeper, deli worker, and cashier, and at step five, the ALJ found that Frazier is capable of making a successful adjustment to work that exists in significant numbers in the national economy.[3] (R. 33-34) Accordingly, the ALJ concluded that Frazier is not disabled within the framework of Medical-Vocational Guideline Rule 203.30.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Frazier's request for review. (R. 7-9) Frazier now appeals that decision to this court and argues that the Commissioner's decision is not supported by substantial evidence.

### III.

Frazier contends that the Commissioner improperly concluded that she retains the RFC to perform a full range of medium work. In support of her contention, Frazier avers that 1) the

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she can also do sedentary and light work. 20 C.F.R. §§ 416.967, 404.1567. The ALJ found that Frazier is able to push, pull, lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (R. 20)

[3] In making this finding, the ALJ relied on the VE's testimony that despite Frazier's specific work restrictions, she is capable of performing sedentary work as a cashier with 15,000 positions regionally and 500,000 nationally and light work as a cashier with 15,000 jobs regionally and 500,000 nationally. (R. 23)

4

Commissioner improperly rejected a portion of the state agency medical consultant's opinion; 2) the VE's testimony was inaccurate; and 3) the Commissioner improperly found her assertions of pain not entirely credible. These contentions will be addressed in turn.

## A.

Frazier first contends that the ALJ erred by failing to explain why he rejected a portion of the state agency medical consultant's RFC determination. Evidence from a non-examining source, such as a state agency medical consultant, is considered opinion evidence and will be given weight according to the amount of relevant evidence the medical source presents to support the opinion. 20 C.F.R. §§ 404.1527(d, f), 415.927(d, f). The ALJ is not bound by a state agency physician's findings, but the ALJ must not ignore these opinions and must explain the weight given to the opinions in his or her decision. SSR 96-6p. In this case, because the ALJ did not give controlling weight to a treating source's opinion, the ALJ was required to explain in his decision the weight given to the State agency medical consultant's opinion. 20 C.F.R. §§ 404.1527(F)(ii), 416.926(f)(ii).

Dr. Frank M. Johnson, M.D., a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment on September 3, 2004, in which he opined that Frazier could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour day, sit about 6 hours in an 8-hour day, and push and/or pull without restriction. (R. 410) Dr. Johnson also opined that Frazier could frequently balance, kneel, and crawl; occasionally climb, stoop, and crouch; and had reaching, handling, and fingering limitations. (R. 411) Finally, Dr. Johnson recommended that Frazier avoid concentrated exposure to extreme cold or heat; wetness; humidity; noise; vibration; fumes, odors, dusts, gases,

5

poor ventilation, etc., and should avoid even moderate exposure to hazards. (R. 412) As grounds for his opinion, Dr. Johnson cited Frazier's documented, medically determinable impairments of kyphosis, scoliosis, tenosynovitis of the right thumb, fibular fracture, headaches, carpal tunnel, and epilepsy. (R. 414)

The ALJ found that Dr. Johnson's RFC assessment was "generally supported by medically acceptable clinical and laboratory diagnostic techniques," and was "not inconsistent with the other substantial medical evidence." (R. 22) Accordingly, the ALJ gave the assessment substantial weight and adopted the exertional limitations as his RFC finding. Despite the ALJ's statement that Dr. Johnson's opinion deserved great weight, however, the ALJ concluded, without explanation, that Frazier had no postural, manipulative, or environmental limitations and accordingly, rejected those sections of Dr. Johnson's assessment.

The court finds that the ALJ erred, as a matter of law, by failing to articulate his reasons for rejecting Dr. Johnson's opinion as to Frazier's postural, manipulative, and environmental limitations. In curtly rejecting these limitations, the ALJ seemingly disregarded the regulations' mandate that the ALJ explain the weight given to the opinion of a state agency medical consultant. The ALJ's failure to do so cannot be deemed harmless, as a remand in this case might lead to a different result. For instance, at step four of the ALJ's sequential analysis, the ALJ determined that Frazier is capable of performing her past relevant work as a cashier. At the administrative hearing, however, the VE testified that the position of cashier requires good use of both hands. (R. 62) If the ALJ were to adopt the manipulative limitations set forth in Dr.

6

Johnson's RFC assessment, Frazier would likely not be capable of working as a cashier and the ALJ would not have met his burden at step five of the sequential analysis.[4]

The importance of an articulated rationale for dismissing Dr. Johnson's opinion as to Frazier's postural, manipulative, and environmental limitations is further underscored by the fact that the ALJ acknowledged that Dr. Johnson's opinion has support in the clinical and diagnostic evidence of record. (R. 22) Thus, in light of both the support for Dr. Johnson's opinion in the medical record and the ALJ's failure to explain his reasons for rejecting a portion of Dr. Johnson's opinion, the undersigned cannot conclude that substantial evidence supports the ALJ's RFC finding.

**B.**

Frazier next argues that the job categories identified by the VE are inconsistent with the ALJ's RFC finding. At the administrative hearing, the VE identified Frazier's past relevant work as cafeteria attendant, cashier, housekeeper, and deli worker. The VE did not give any Dictionary of Occupational Title ("DOT") listing numbers for these positions. Rather, the VE testified that each position was medium duty. (R. 59-61) Frazier argues that these jobs are assigned DOT listing numbers of 311.677-010, 211.462-014, 323.687-014, and 316.684-014, respectively, and are performed at the light exertional level, rather than medium.

The undersigned finds that any error by the VE in describing the exertional level of Frazier's past relevant work is harmless, as the job categories are consistent with the ALJ's

---

[4] It is also unlikely that the ALJ would be able to meet his burden at step four of the sequential analysis. At step four, the ALJ determined that Frazier is capable of performing her past relevant work as a cafeteria attendant, housekeeper, deli worker, and cashier. However, the positions of "cafeteria attendant," "cleaner, housekeeping," and "deli cutter-slicer," may each require frequent reaching and handling. Pl. Ex. 1

7

determination of Frazier's RFC, regardless of whether they are performed at a medium or light exertion level. The ALJ found that Frazier retains the RFC for medium work. Pursuant to the Regulations, if someone can do medium work, she can also do light work. 20 C.F.R. §§ 404.1567(c), 416.967(c). Thus, any error by the VE erred in describing Frazier's past work as medium, rather than light, work does not effect the ALJ's finding that Frazier can return to her past relevant work.[5]

**C.**

Frazier's final contention is that the ALJ erred in finding her complaints of pain not entirely credible. Specifically, she contends that the medical record corroborates her allegations of chronic pain caused by fibromyalgia, scoliosis, lordosis, kyphosis, osteopenia, and migraines. For the following reasons, however, the court finds that substantial evidence supports the ALJ's credibility determination.

Pursuant to the Social Security Regulations, allegations of pain and other subjective symptoms must be supported by objective medical evidence. 20 C.F.R. §§ 404.1529, 416.929. The regulations set forth a two-step process for evaluating symptoms such as pain. First, there must be an underlying medically determinable physical impairment that could reasonably be expected to produce the individual's pain or other symptoms. Craig v. Chater, 76 F.3d 585, 593 (4th Cir. 1996). Once established, the intensity, persistence, and limiting effects of the individual's symptoms must be evaluated to determine the extent to which they limit the

---

[5] Similarly, any error by the VE caused by describing the deli worker position as semi-skilled, whereas Frazier argues that the position is unskilled, will not effect the ALJ's finding that Frazier can return to her past relevant work as a deli slicer. See 20 C.F.R. §§ 404.1568(d), 416.968(d) (noting that transferability of skills is most probable among jobs in which the same or a lesser degree of skill is required).

8

claimant's ability to do basic work activities. Id. at 595. In making this finding, the ALJ must determine the credibility of the claimant's statements based on consideration of the entire record. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

In assessing a claimant's credibility, the ALJ may properly consider factors such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (5) treatment received by the claimant for pain or other symptoms; (6) measures undertaken to relieve pain; and (7) other factors concerning functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). A claimant's "symptoms of pain need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Craig, 76 F.3d at 595.

In this case, the ALJ reviewed the medical record and at step one of the credibility analysis, found that Frazier has medically determinable impairments which could be expected to produce the symptoms she alleges. (R. 21) At step two, however, the ALJ found that Frazier's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. 21). To reach this conclusion, the ALJ first noted that although Frazier has a history of occasional migraine headaches, (R. 366, 364, 429), her headaches became well-controlled and decreased in frequency after her treating neurologist, Michael Sisk, M.D., prescribed Toradol in March of 2003. (R. 364, 434) In September of 2005, Frazier reported to a consulting neurologist, William L. Tingler II, M.D., that her headaches were still well-controlled

9

with Toradol and that she took the medication only on an as-needed rare basis.[6] (R. 434) In fact, the record indicates that since Frazier's alleged onset of disability date, Toradol was not strong enough to treat Frazier's migraine pain only three times. On those dates, September 8, 2002, March 3, 2004, and December 30, 2005, Frazier visited the emergency room for treatment. (R. 197-204, 304-10, 441-45) Finally, although Frazier testified at the administrative hearing that Toradol "knocks [her] out for two days," (R. 54), the medical record is devoid of any mention by Frazier of side effects resulting from Toradol. To the contrary, she informed Dr. Sisk during a March 31, 2003 appointment that the medication was "quite effective" and "doesn't really bother her." (R. 364)

The ALJ next noted that an x-ray performed in April of 2004 revealed that Frazier has "dorsal kyphosis and dorsal scoliosis with a trace of lumbar scoliosis and minimal facet joint arthritis at the L5-S1 level."[7] (R. 21, 350) Additionally, the ALJ noted that on December 7, 2004, rheumatologist, Joseph P. Lemmer, M.D. assessed Frazier as having myalgias and arthralgias with tender points most consistent with fibromyalgia syndrome. (R. 21, 451). Frazier's physicians recommended conservative treatment for these impairments, consisting of physical therapy, an exercise program, and medication. (R. 350, 451). The record indicates that

---

[6] Frazier also testified at the administrative hearing that her migraines respond well to Migranol, in that the prescription nasal spray made her headache go away and she did not experience nausea. (R. 54)

[7] The ALJ's acknowledgment on page 21 of his opinion, that the April, 2004 x-ray revealed dorsal kyphosis and dorsal scoliosis with a trace of lumbar scoliosis, leads the court to conclude that the ALJ's contrary statement on pages 18-19, that Frazier "did not" appear to have these impairments, was a typographic error.

10

although Frazier presented for an initial physical therapy certification with Lewis-Gale Rehabilitation Center on May 7, 2004, she did not pursue therapy beyond that date. (R. 398)

The ALJ also considered Frazier's ability to do a wide variety of daily tasks in reaching the conclusion that the degree of pain and functional limitations she alleged are not supported by the record. A Daily Activities Questionnaire completed by Frazier in May of 2004, and a Function Report completed by Frazier in December of 2004 each revealed that Frazier is capable of completing a range of activities at different exertional levels, including caring for her mother and husband, vacuuming, doing laundry, mopping, cleaning her bathrooms, driving, volunteering at the Salem Food Pantry, and helping at Bible school. (R. 21, 124-31, 147-54) Furthermore, Frazier worked for a week in August of 2002, performed production work in October of 2002, and sought employment in November of 2002. (R. 21, 205, 381)

Finally, the ALJ considered the opinion of Dr. Johnson, a state agency physician, who opined that despite Frazier's medically determinable impairments, she retained the capacity to perform work at the medium exertion level. (R. 410-15) Dr. Johnson's opinion, coupled with the conservative treatment Frazier received for back pain, Frazier's positive response to migraine treatment medication, and ability to perform a wide variety of daily activities provide substantial evidence to support the ALJ's conclusion that Frazier's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible.

## IV.

Considering the evidence in the administrative record as a whole, the court finds that the ALJ erred by failing to explain his reasons for rejecting a portion of the state agency physician's RFC Assessment and thus, the Commissioner's decision does not meet the substantial evidence

11

standard. The case will be remanded to the Commissioner with instructions to explain the weight given to Dr. Johnson's RFC assessment opinion, particularly with regard to those sections rejected by the ALJ.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

ENTER: This ___ day of July, 2008.

Michael F. Urbanski
United States Magistrate Judge